## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | | |
|---|---|---|
| THOMAS COOK, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING, L.P., | ) ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

COMES NOW Thomas Cook ("Plaintiff"), by counsel and on behalf of himself and all members of the putative classes set forth below, and for his Complaint against Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC") (collectively "Defendants"), alleges as follows based on personal knowledge as to his own conduct and Defendants' communications to him, and on information and belief as to Defendants' other conduct:

### NATURE OF THE CASE

1.      Plaintiff and class members currently have or formerly had loans or lines of credit with Defendants, secured by their residential property, and were required to purchase flood insurance by Defendants.

2.      Defendants unlawfully required Plaintiff and class members to purchase or maintain flood insurance on their property in excess of the amounts required by federal law, the borrowers' loan agreements, and Defendants' secured interest in the property.  Defendants first demanded that the borrowers purchase the insurance themselves.  If the borrowers did not comply, Defendants purchased, or "force-placed," insurance on the secured property and added the premiums to the

1

borrowers' loan balances, thereby causing borrowers to incur additional interest and other

charges.

3.       Defendants required borrowers to purchase insurance without adequately and clearly

disclosing the terms of such requirements in the relevant mortgage or loan documents.

4.       Defendants purchased the insurance from Balboa Insurance Group, BOA'swholly owned

subsidiary insurance company and/or other affiliate companies, and gave or accepted unlawful

kickbacks, referral fees, commissions, or other compensation on the transactions, thereby

realizing unlawful financial gains.

5.       Defendants engaged in this course of conduct knowing that it was unlawful, in bad faith,

in violation of standards of fair dealing, and contrary to the borrowers' rights.

6.       Based on Defendants' conduct, Plaintiff asserts federal claims under the Truth in Lending

Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA").  Plaintiff asserts these

claims on behalf of a putative nationwide class consisting of all borrowers who have or had loans

or lines of credit with Defendants secured by real property in the United States, and whom

Defendants required to purchase of maintain flood insurance in excess of Defendants' security

interest during the applicable limitations periods.

7.       Defendant also asserts state law claims of Breach of Contract/Breach of the Implied

Covenant of Good Faith and Fair Dealing andUnconscionability.   Plaintiff asserts these claims

on behalf of a putative Florida class consisting of all people who have or had loans or lines of

credit with Defendants secured by real property in Florida, and whom Defendants required to

purchase or maintain flood insurance in excess of Defendants' security interest during the

applicable limitations periods.

8.       Plaintiff seeks damages, declaratory and injunctive relief, penalties, attorney's fees, and

costs on behalf of himself and members of the putative classes.

## PARTIES

9.       Plaintiff resides in Jacksonville, Florida, but at the time of the relevant acts at issue in this

case, Plaintiff was a resident of Port Charlotte in Charlotte County, Florida, and is a member of

both putative classes.

10.      BOA is national banking association headquartered in Charlotte, North Carolina. BOA

does business in the state of Florida, and throughout the United States.

11.      Defendant BAC is a wholly-owned subsidiary of BOA headquartered in Calabasas,

California. BAC services mortgage loans and lines of credit owned by BOA, including loans

and lines of credit secured by real property in the state of Florida, and throughout the United

States. At all relevant times, BOA controlled, directed, and approved BAC's conduct.

## JURISDICTION AND VENUE

12.      The Court has personal jurisdiction over Defendants because they regularly transact

business within the state of Florida.

13.      The Court has federal question jurisdiction over Plaintiff's TILA and RESPA claims

pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state-law claims

pursuant to 28 U.S.C. § 1367.Additionally, the Court has diversity jurisdiction under the Class

Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d)(2), because there is diversity of citizenship

between Plaintiff and Defendants, the amount in controversy exceeds $ 5,000,000, and each

putative class contains more than 100 members.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendants
        conduct business in this District, and because a substantial part of the events giving rise to
        Plaintiff's claims occurred in this District.

15.     Venue is proper in this Court pursuant to Local Rule 1.02(c), because Plaintiff's claims
        the mortgaged property is located in Charlotte County, which lies in the Forts Myers Division.

## SUBSTANTIVE ALLEGATIONS

16.     In October 2006 Plaintiff, along with his wife, obtained a home mortgage loan in the
        amount of $105,000 on a home in Part Charlotte, Florida.  Under the terms of the mortgage
        instrument, First Magnus Financial Corporation ("First Magnus") was identified as the lender,
        and the Mortgage Electronic Registration System ("MERS") was identified as the mortgagee,
        acting solely as a nominee for the lender and its successors and assigns.

17.     Plaintiff's home was and is located in a Special Flood Hazard Area ("SFHA"), as
        designated by the Federal Emergency Management Agency ("FEMA").  Pursuant to this
        designation, federal law required that the home be covered by flood insurance at least equal to
        the lesser of (a) $250,000, the maximum amount of insurance offered by the National Flood
        Insurance Program ("NFIP"); and (b) the lender's security interest in the property

18.     In addition to federal insurance requirements, Plaintiff's mortgage instrument stated that
        Plaintiff was required to maintain flood insurance in the amounts, and for the periods that the
        lender required.  Plaintiff obtained a flood insurance policy in the amount of $106,000, which
        was slightly more than First Magnus's security interest in the property.  First Magnus did not
        object to Plaintiff's flood insurance as being inadequate at any time that it owned Plaintiff's
        mortgage.

19.      Plaintiff's mortgage was subsequently acquired by Countrywide Financial ("Countrywide").  Countrywide did not object to Plaintiff's flood insurance as being inadequate at any time that it owned Plaintiff's mortgage.

20.      Plaintiff's mortgage was subsequently acquired by BOA.  According to a letter from BOA dated January 6, 2011, BAC sent Plaintiff a letter on May 10, 2010 declaring that Plaintiff's flood insurance was "inadequate."  The letter stated that BOA required Plaintiff to maintain flood insurance equal to the lesser of (a) the $250,000 NFIP limit; or (b) the replacement cost value of improvements to Plaintiff's property, which BOA designated as $158,000.  The letter said that BOA would give Plaintiff until June 28, 2010 to provide BOA proof that Plaintiff had obtained the additional coverage.  If Plaintiff did not obtain the additional coverage, BOA would purchase the additional coverage at Plaintiff's expense.  Though the letter did not state outright that federal law required BOA to increase Plaintiff's coverage requirement, it did not set forth the parameters of the federal requirement, but rather BOA's requirements. The letter thereby falsely implied that BOA's demand of additional coverage was mandated by federal law. Plaintiff did not receive the May 10 letter, and his record of its contents are based on BOA's recitation of its contents in a later letter dated January 6, 2011.

21.      The additional coverage BOA allegedly demanded in the May 10 letter was contrary to Plaintiff's understanding of the mortgage terms.  It was also contrary to the understanding of BOA's predecessors in interest First Magnus and Countrywide, as evidenced by the fact that neither company ever found Plaintiff's coverage to be inadequate.  Indeed, the additional coverage BOA demanded was contrary to any reasonable interpretation of the mortgage, since the lender's financial exposure was limited to the amount of the mortgage loan, and any amount

of insurance in excess of that amount was unnecessary to protect the lender's legitimate business interests.

22.        Plaintiff did not purchase the additional coverage that Defendants demanded, and Defendants force-placed insurance on Plaintiff's home on June 29, 2010, as evidenced by a charge placed on Plaintiff's escrow account. According to BOA, BAC sent Plaintiff a letter on July 1, 2010 notifying Plaintiff of this action. Plaintiff did not receive this letter, and his only record of its contents is the January 6, 2011 letter mentioned above.

23.        BOA purchased the insurance from its wholly-owned subsidiary Balboa, for a premium of $283.80. The policy was backdated to May 1, 2010, and had a one-year term. The premium was charged to Plaintiff's escrow account and added to his loan balance.

24.        At no time before force-placing the insurance did Defendants give Plaintiff notice as to who would issue the insurance, the length of the term, or the premium he would be charged. Since Balboa was wholly owned by BOA, BOA ultimately received the entire benefit of the transaction.

25.        Plaintiff paid off his mortgage loan on December 28, 2010. Defendants issued Plaintiff a refund of $96.40, representing the unused premium paid up through May 1, 2011.

26.        Plaintiff has repeatedly attempted to get Defendants to reverse the unfair and unlawful insurance charges, with no success. Plaintiff's last attempt at resolving the matter without litigation was by a letter dated January 7, 2011. The letter was in response to a letter from the office of the CEO and President of BOA dated January 6, 2011, in which BOA defended its practices and refused to refund the additional $187.40 to which Plaintiff was entitled.

27.        Defendants have engaged in the above practices in order to realize unfair financial gains from their customers, including Plaintiff. By adding the cost of force-placed insurance to

6

borrowers' loan balances, Defendants earn interest on the amounts charged, and cause borrowers

to incur additional costs and fees.

28.     By buying force-placed insurance from its subsidiary Balboa, Defendants also earned a

commission for Balboa, and ultimately realized the entire profit on the transaction.

29.     Upon information and belief, discovery will reveal other direct and indirect financial

benefits that Defendants obtain as a result of the conduct set forth above.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23.

31.     Plaintiff asserts Counts I and II on behalf of a proposed nationwide class defined as

follows:

> **Proposed Nationwide Class:** All people who have or had a loan or line of credit owned
> by BOA, and secured by real property located in the United States, and were charged by
> Defendants, or either of them, or their affiliates, for flood insurance in excess of the loan
> amount or credit line secured by the real property, within one year prior to this action's
> filing date through the date of final disposition of this action.

32.     Plaintiff asserts Counts III and IV on behalf of a proposed statewide class defined as

follows:

> **Proposed Florida Class:**     All people who have or had a loan or line of credit
> owned by BOA, and secured by real property located in the State of Florida, and
> were charged by Defendants, or either of them, or their affiliates, for flood insurance in
> excess of the loan amount or credit line secured by the real property, within five years
> prior to this action's filing date through the date of final disposition of this action.

33.     Upon completion of discovery with respect to the scope of the classes, Plaintiff reserves

the right to amend the class definitions. Excluded from the classes are Defendants and any entity

in which any Defendant has a controlling interest, and their legal representatives, officers,

directors, assignees and successors. Also excluded from the classed is any judge to whom this

action is assigned, together with any relative of such judge within the third degree of relationship, and the spouse of any such persons.

34.      **Numerosity**: Membership in the Class is so numerous it is impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined through appropriate discovery. The number is estimated to be at least in the thousands.

35.      **Commonality**: There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

   a.      Whether federal law requires Defendants' class members to purchase or maintain flood insurance in amounts in excess of BOA's security interest in their property;

   b.      Whether Defendants' form communications to class members misrepresented federal flood insurance requirements;

   c.      Whether Defendants mortgage and loan documents adequately and clearly disclose the amount of flood insurance that Defendants required, and authorized Defendants to demand, force-place, and/or charge class members for flood insurance in amounts in excess of BOA's security interest in their property;

   d.      Whether Defendants gave class members all legally-required notices regarding its procedures for force-placing insurance;

   e.      Whether Defendants gave or accepted kickbacks, commissions, or other compensation in connection with the force-placing of flood insurance;

f.  Whether Defendants breached their duty of good faith and fair dealing toward class members by requiring them to purchase or maintain flood insurance in amounts in excess of Defendants' security interest in their property and/or by giving or receiving kickbacks, commissions, or other compensation in connection with the force-placing of flood insurance.

g.  Whether Defendants breached their contracts with class members by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed in such contracts;

h.  Whether the force-placed insurance terms of Defendants' contracts with class members are procedurally and substantively unconscionable;

i.  The appropriateness and proper form of any declaratory or injunctive relief;

j.  The appropriateness and proper form of any monetary and other damages; and

k.  The appropriateness and proper form of any penalties, fines, or other remedies.

36.  **Typicality**: Plaintiff's claims are typical of the claims of class members because Plaintiff and the proposed classes sustained damages arising out of the Defendants' wrongful conduct as detailed herein. Specifically, Plaintiff's claims and the class members' claims arise from Defendants' unlawful, unfair, and unconscionable demands that they purchase or maintain flood insurance in amounts in excess of Defendants' security interest in their property, Defendants' inadequate and unclear disclosure of terms requiring force-placed insurance, and Defendants'

giving or receiving of illegal kickbacks, commissions, or other compensation to or from its affiliates in connection with the sale of force-placed insurance.

37.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed classes and has retained counsel that is competent and experienced in class action lawsuits. Plaintiff has no interests that are antagonistic to or in conflict with those of the class members and therefore will be an adequate representative for the class members.

38.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the proposed classes is impracticable. Furthermore, because the damages suffered by individual members of the classes may in some instances be relatively small, the expense and burden of individual litigation make it impossible for such class members to individually redress the wrongs done to them. Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## COUNT I

### (Violation of TILA, 15 U.S.C. § 1601, *et seq.*)

39.     Plaintiff alleges and incorporates the preceding allegations.

40.     Plaintiff's and other class members' mortgage loans and lines of credit are subject to the disclosure requirements of TILA, and its implementing regulations, commentary, and interpretation by federal agencies.

41.     BOA is a creditor, as defined by TILA.

42.     BOA was required by TILA to timely, clearly, and conspicuously disclose all finance charges, other charges, and third-party charges that may be imposed.

43.     BOA was further required to accurately and fully disclose the terms of the legal obligations between the parties.

44.     BOA violated these and other requirements of TILA by, *inter alia*, failing to clearly, fully, and accurately disclose its flood insurance requirements, and falsely stating or implying in its communications with Plaintiff and other class members that they were required to maintain flood insurance in amounts greater than required by federal law and/or their loan documents, and greater than necessary to protect BOA's security interest in their property.

45.     BOA additionally violated TILA by adversely changing the terms of Plaintiff's and other class members' loans and lines of credit after origination, without their consent, by requiring and/or force-placing flood insurance in excess of the amount of BOA's security interest in their property, and by failing to provide proper notice, after origination, that BOA was amending the terms of their loans or lines of credit as described in the originating documents.

46.     Plaintiff and other class members have been injured and have suffered monetary losses as a result of BOA's violations of TILA.

47.     As a result of BOA's violations of TILA, Plaintiff and other class members are entitled to recover actual damages and a penalty of the lesser of $500,000 or 1% of BOA's net worth.

48.     Plaintiff and class members are also entitled to recover costs and attorney's fees.

49.     Plaintiff's claim is timely, as this action was filed within one year from the date Defendants charged Plaintiff for force-placed insurance, as calculated under Federal Rule of Civil Procedure 6.

## COUNT II

### (Violation of RESPA, 12 U.S.C. 2601, *et seq.*)

50.     Plaintiff alleges and incorporates the preceding allegations.

51.     Plaintiff's mortgage loan is a federally regulated mortgage loan subject to the requirements of RESPA.

52.     RESPA prohibits the giving or accepting of any fees, kickbacks, or things of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally regulated mortgage loan shall be referred to any person.

53.     RESPA prohibits the giving or accepting of any portion, split, or percentage of any charge made or received for the rendering of real estate settlement services in connection with a transaction involving a federally regulated mortgage loan other than for services actually performed.

54.     24 C.F.R. § 3500.2 defines settlement services to include the provision of services involving flood insurance.

55.     Defendants have violated RESPA by giving or receiving fees, kickbacks, other things of value in connection with obtaining force-placed insurance from BOA's wholly owned subsidiary Balboa and/or other affiliated companies.

56.     Defendants have unlawfully accepted portions, splits, or percentages of premiumscharged for force-placed insurance, without performing actual services.

57.     As a result of Defendants' RESPA violations, Plaintiff and other class members are entitled to statutory damages equal to treble the amount of costs they incurred as a result of Defendants' force-placement of flood insurance.

58.     Plaintiff and other class members are also entitled to declaratory and injunctive relief forbidding Defendants from engaging in further RESPA violations.

59.     Plaintiff and other class members are entitled to recover their costs and attorney's fees.

12

60.      Plaintiff's claim is timely, as this action was filed within one year from the date

Defendants charged Plaintiff for force-placed insurance, as calculated under Federal Rule of

Civil Procedure 6.


## COUNT III

### (Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing)

61.      Plaintiff alleges and incorporates the preceding allegations.

62.      Plaintiff and other class members were parties to mortgage loan or credit line contracts

with BOA.

63.      Plaintiff's and other class members' contracts did not require flood insurance in excess of

the amount of BOA's security interest in their property.

64.      The amount of flood insurance required by Plaintiff's and other class members'contracts

was the amount of the loan or credit line secured by the property.

65.      Defendants breached these contracts by requiring Plaintiff and other class members to

purchase or maintain flood insurance in excess of the amount secured by their property.

66.      Plaintiff's and other class members' contracts allowed BOA discretion in setting the

amount of flood insurance that they were required to purchase or maintain. Implied in that grant

of discretion was an obligation of good faith and fair dealing on the part of BOA to observe

reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in

contracting.

67.      The parties' purpose in contracting for flood insurance was to protect BOA's security

interest in the property, as evidenced by the fact that both of BOA's predecessors-in-interest

required no more flood insurance than was necessary to protect their security interest.  Moreover,

under any reasonable interpretation of the contractual terms, BOA can have no legitimate interest in requiring more flood insurance than necessary to protect its security interest.

68.     Defendant's requirement that Plaintiff and other class members purchase or maintain greater levels of flood insurance was a naked attempt to extract additional unearned profits from them, and bore no relationship to the parties' purposes in contracting. Defendants' requirement was therefore an abuse of the discretion provided in the contracts, in breach of the contracts and violation of the obligation of good faith and fair dealing implied in every contract.

69.     As a result of Defendants' violations, Plaintiff and other class members are entitled to compensatory damages in the amount of any premiums, interest charges, or other charges arising from Defendants' force-placement of flood insurance on their property.

70.     Federal regulators have warned lenders "to avoid creating situations where a building is over-insured," and stated that although there are no penalties for over-insurance under federal law, there may be penalties under applicable state law. *See* 74 Fed. Reg. 35914, -918, -936 (July 21, 2009). Thus, the idea of preemption of state law claims has been considered and rejected by the federal government, and Plaintiff's state law claims are not preempted.

71.     Plaintiff's claim is timely, since this action was filed within five years of the date that Defendant's charged him for force-placed insurance.

## COUNT IV

### (Unconscionability)

72.     Plaintiff alleges and incorporates the preceding allegations.

73.     There was dramatically disparate bargaining power as between Plaintiff and other class members and Defendants, and Plaintiff's and other class members contracts with Defendants were adhesive in nature. Accordingly, the contracts were procedurally unconscionable.

14

74.     To the extent that they require flood insurance in excess of Defendants' security interest, allow Defendants to reap unjust profits by purchasing insurance from Balboa and/or other affiliates,and/or to give or receive kickbacks, commissions, or other things of value in connection with such purchases,the insurance provisions of Plaintiff's and other class members' contracts are terms that no reasonable person would agree to and no fair person would accept. Accordingly, the insurance provisions are substantively unconscionable.

75.     Plaintiff and other class members suffered damages when Defendants charged them for force-placed insurance in excess of the amount of Defendant's security interest, purchased such insurance from Balboa and/or other affiliates, and/or gave or received kickbacks, commissions, or other things of value in connection with such purchases.

76.     Plaintiff and other class members are therefore entitled to have the insurance terms set aside as unenforceable, and to damages in the amount of all funds extracted from them as a result of their enforcement, including premiums, interest, and other fees.

77.     Plaintiff's claim is timely, since it was brought within five years of the date that Defendants charged him for force-placed insurance on his property.

## PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiff, on behalf of himself and the members of the proposed classes, prays for the following relief:

    a.     A determination that this action is properly maintainable as a class action;

    b.     A declaration that Defendants' conduct was and is in violation of applicable law;

    c.     Injunctive relief restraining Defendants' from committing further violations of applicable law;

d.       An award of actual damages in the amount of premiums, interest, and other charges arising from Defendants' requiring that Plaintiff and other class members purchase or maintain flood insurance in excess of the amount secured by their property;

e.       An award of the lesser of $500,000 or 1% of Defendants' net worth;

f.       An award of treble the costs that Plaintiff and other class members incurred as a result of the force-placement of insurance;

g.       An award of any other penalties, statutory damages, restitution, interest, or other monetary relief authorized by under the counts pled;

h.       An award of costs and attorney's fees; and

i.       An award of such other and further relief at law or in equity as the Court deems appropriate.

## JURY TRIAL DEMAND

79.       Plaintiff demands a trial by jury.

Dated:  June 29, 2011

TRIAL COUNSEL:

Bryan F. Aylstock (0078263)
Justin G. Witkin (0109584)
AYLSTOCK WITKIN KREIS &
OVERHOLTZ PLLC
17 East Main Street, Suite 200
Pensacola, Florida 32502
Phone:  850-202-1010
Fax:  850-916-7449
baylstock@awkolaw.com

*Attorney for Plaintiff*